JOHAN J. BECKER et al., Respondents, *v.* WALTER S. CHURCH, Appellant.

WALTER S. CHURCH, Appellant, *v.* JOHAN J. BECKER, Respondent.

A court of equity has jurisdiction of an action on the part of a tenant to set aside and cancel a written lease on the ground of fraud in its procurement, and in such action may inhibit the defendant from continuing any legal proceedings through which the defendant is attempting to assert a right founded on the lease.

Accordingly, *held*, that an action was maintainable to perpetually restrain summary proceedings, pending before a county judge, instituted by defendant to remove plaintiff from certain premises, upon averments and proof that defendant was not the owner of the premises and that plaintiff was induced to sign the lease by fraud on the part of defendant; and this without regard to the question as to the jurisdiction of the county judge to try the question of fraud in the summary proceedings.

In an action brought in 1883 to restrain defendant from removing a grist-mill from a certain one-acre lot, of which plaintiff claimed to be the owner in fee and defendant a tenant thereof under him, it appeared that the premises were conveyed in 1842 by warranty deed by K. to V. R. Subsequently one P., or his grantees, erected thereon the grist-mill in question; it did not appear by what right or title P. or his grantees assumed to take possession or to occupy. Adjoining was a four-acre lot occupied at the time of such conveyance to V. R. by P. under a lease executed to him by V. R. In 1860 P. S., and subsequently his son E. S., were in possession of both lots, they paying to V. R. the rent, fixed and payable, for the four-acre lot; it nowhere appeared that there was any agreement to pay rent on the one-acre lot. In 1860 E. S. conveyed by quit-claim

deed to defendant the four-acre lot, "subject to the annual rent reserved in the original lease" to P., and by a separate description conveyed the one-acre lot. Before defendant's purchase he was informed by the agents and attorneys of V. R. that the latter had no title to or claim upon the mill lot. Defendant has occupied said lot ever since said conveyance to him. In 1882 V. R. conveyed both lots to plaintiff. *Held*, that defendant had acquired, as against plaintiff, a good title in fee by adverse possession; and that the conveyance to plaintiff of the mill lot while defendant was in possession, claiming under a title adverse to V. R., was void for champerty. (1 R. S. 739, § 147.)

Reported below, 42 Hun, 258.

(Argued June 26, 1889; decided October 8, 1889.)

APPEALS from judgments of the General Term of the Supreme Court in the third judicial department, entered upon orders made November 16, 1886, which affirmed judgments in favor of plaintiffs in the action first above-entitled, and in favor of defendant in the action second entitled, entered upon reports of a referee.

The nature of the actions and the material facts are stated in the opinion.

*William Youmans* for respondents. The jurisdiction of the court of equity was complete in this case. (108 N. Y. 507; Code, § 499; 111 N. Y. 559.) The entry of Hughes, under a deed from Walter, was an original entry, under color of title sufficient to make it a possession and holding adversely to the title of the plaintiff's grantor and to render their deed to the plaintiff void under the statute, without regard to the manner in which Walter had obtained his possession. (*Jackson* v. *Elston*, 12 J. R. 452; *Jackson* v. *Smith*, 13. id. 406; *Thompson* v. *Cameron*, 24 Wend. 87; *Bradstreet* v. *Clark*, 12 id. 602.) Under the statute and laws of this state there must be a claim or color of title, but if the entry is under color of title, the possession will be adverse, however groundless the title. (*La Frambois* v. *Jackson*, 8 Cow. 598; *Humbert* v. *Trinity Church*, 24 Wend. 387; 53 N. Y. 296.) Plaintiff's deed was absolutely void for champerty. (Code of Civ. Pro. § 373; *Whiting* v. *Edmonds*, 94 N. Y. 314; *Christie* v. *Gage*, 71 id. 189, 193; *Jackson* v. *Harson*, 7 Cow. 323.)

*George L. Stedman* for appellant. Sittle's deed to Becker was an assigment of a lease by one tenant to another and Becker took subject to the lease. (*Whiting* v. *Edmonds*, 94 N. Y. 309.) Such a holding is not adverse, or under a hostile title, and the referee erred in holding that the conveyance to defendant Church was, as to this one acre, void for champerty. (*Fish* v. *Fish*, 39 Barb. 513; *Desilva* v. *Flynn*, 9 Civ. Pro. Rep. 426.) Plaintiff cannot now repudiate his position as tenant without showing reasons therefor, and especially that he was then laboring under a mistake as to this point. (*Ingraham* v. *Baldwin*, 9 N. Y. 45; *Woodruff* v. *Erie Railway*, 93 id. 609.) The relation of landlord and tenant having been shown to exist, was not terminated till the notice served by defendant. (Code of Civ. Pro. § 373; *De Lancey* v. *Ganong*, 9 N. Y. 9; *Pugsley* v. *Aiken*, 11 id. 495, 498; *Loughran* v. *Smith*, 75 id. 205; *Witt* v. *Mayor, etc.*, 6 Robt. 442; *Foughera* v. *Cohn*, 6 St. Rep. 733; 43 Hun, 454; *Burns* v. *Bryant*, 31 N. Y. 453; *Larned* v. *Hudson*, 60 id. 102; *People* v. *Schackus*, 40 Barb. 551; *Reeder* v. *Sayre*, 70 N. Y. 186; *Rose* v. *Inhabitants of Stone*, 6 Durnf. & East, 295; *Doe* v. *Porter*, Id. 16.) This action, being to restrain summary proceedings by injunction, cannot be maintained, except upon grounds which would be sufficient to stay proceedings, if before judgment, or to stay final judgment in an action of ejectment. (Code of Civ. Pro. § 2265; *Knox* v. *McDonald*, 25 Hun, 268; *Jessurun* v. *Mackie*, 24 id. 624; 61 How. 261; 86 N. Y. 622; *Bradwell* v. *Holcombe*, 4 Civ. Pro. Rep. 159; *People* v. *Howlett*, 76 N. Y. 574.)

GRAY, J. In these two actions, which were argued as one, the facts are alike; but in each certain equitable relief is sought, the claim to which is based by the plaintiffs upon a different conclusion drawn from those facts. In Becker's action against Church he seeks to enjoin certain summary proceedings before the county judge, which Church had instituted for the removal of Becker and others, as tenants of certain premises, on the ground of an expiration of their terms of

tenancy.   The plaintiffs, however, say that the defendant is not the owner of the premises, and that a writing, purporting to constitute. a tenancy at will in the premises, between him and the plaintiff Becker, was of no effect and void, because procured through fraud and deception.   The referee, before whom the issues came on for trial, sustained the plaintiffs in their contention and awarded them judgment, perpetually enjoining the summary proceedings under which defendant sought to recover possession of the premises.   The judgment was affirmed at the General Term by a divided court.   The division was not upon the conclusion of the referee as to the invalidity of the lease.   The finding in that respect was concurred in by all of the judges, and, as it was sustained by the evidence in the case, the judgment, in that respect, will not be disturbed here.   Three opinions were written.   Two of the learned judges differed upon the right to maintain this action, placing their difference upon the question of the power of the county judge to try the question of the alleged fraud in the procurement of the lease in the proceedings before him. But the third judge, while agreeing in the view that the county judge had the power to try the question, was of the opinion that this action was, nevertheless, maintainable, and concurred in affirming the judgment herein, by which the pretended lease was canceled.

There cannot be any doubt as to the jurisdiction of courts of equity over actions to cancel and set aside instruments on the ground of fraud in their procurement.   Such actions are in the nature of preventive remedies.   The existence of the instruments may be a well-founded source of anticipated danger by the party whom they do or whom they are designed to affect.   The reason for the maintenance of the action for their avoidance is to be found in the reasonable apprehension that the evidence of the fraud may not be always attainable ; or that the defense of fraud may not always be available at law.   If the fraudulent instrument affects the title to land, equity entertains the action for its cancellation, in order to remove the cloud thrown upon the plaintiff's title.   (Story's

Eq. Juris. 694, 695, 700; *Hamilton* v. *Cummings*, 1 Johns. Ch. 520, 524; *Pettit* v. *Shepherd*, 5 Paige, 493.) Of course, in all such cases the propriety of granting equitable relief rests in the sound discretion of the court, and it is not controlled by any general rules. It is but a natural consequence of this equitable jurisdiction to decree the cancellation of a fraudulent instrument, that the court should inhibit the defendant from continuing any legal proceedings, through which he is attempting to assert a right based on the existence of that instrument. The power to control and restrain the proceedings in pending actions, in such a case, is a necessary part of the remedy, which a court of equity is supposed to be capable of completely administering. (Eden on Inj. chap. 2, p. 4.)

In the present case the plaintiffs have chosen to bring their action for the cancellation of the pretended lease, upon the existence of which the defendant bases his right to remove them. Whatever the county judge's jurisdictional powers may have been, with respect to the investigation of the facts surrounding the making of this lease, and as to the application of the law to the same, in disposing of the case it is quite unnecessary to pass upon the question.

No objection was made by the answer to the litigation of the questions between the parties in a court of equity, and the defendant must be deemed to have consented to such a disposition of the matters in issue between him and the plaintiffs. The action was affirmative on the plaintiffs' part, and was taken as a means of obtaining a complete remedy for the fraud upon their rights. Whether the plaintiffs were entitled, under all the circumstances proved, to be relieved from the obligation of the writing was certainly a matter peculiarly within the cognizance of a court of equitable jurisdiction. When they brought the matter into the Supreme Court, that court at once acquired jurisdiction to investigate the question. The equitable jurisdiction attaches when it it duly invoked, and continues until the proceedings have ripened into a decree.

The second-entitled action was brought by Church to enjoin Becker from removing a grist-mill on certain premises, of

which Church alleged himself to be the owner in fee, and Becker to be a tenant thereof under him. The question of title to the premises is thus presented. They consist of about one acre in extent of land, in the town of Knox, Albany county, and lie on the west bank of Foxes creek. They were conveyed in 1842 by one Kast to Stephen Van Rensselaer by warranty deed. On the opposite bank of the stream was a parcel of land, of about four acres in extent, which was, at that time, occupied by one Post, under a lease to him, executed in 1795, for a term of sixteen years, by Van Rensselaer. At a time subsequent to the sale by Kast of this one acre, it appears that Post, or his grantees, erected a new grist-mill (which is the one in question now) on the one-acre lot. No written lease was ever executed by Van Rensselaer of this lot, and it does not appear by what right or title Post, or his grantees, assumed to take possession of and to occupy it as they did. Prior to the year 1860 one Paul Settle and, subsequently, his son Edward Settle were in possession of the two parcels. They paid rent to the Van Rensselaers at the rate of $60 a year ; but that sum was the rental fixed and payable on the Post parcel of four acres, and it nowhere appears that there was any agreement to pay rent on the one-acre parcel. In 1860 Edward Settle conveyed by quit-claim deed to Becker, the defendant here, the parcel of four acres covered by the Post lease, " subject to certain annual rents reserved in the original lease to Jacob Post ; " and, by a separate description, also conveyed the one acre, above referred to as having been conveyed by Kast to Van Rensselaer, on which the mill stood.

The referee has found that, prior to Becker's purchase and the conveyance to him, he was informed by the agents and attorneys of Van Rensselaer that Van Rensselaer had no title to, or claim upon, the mill property. Becker's grantors, Settle and Settle's father and his father's grantor, had been in continuous occupation of the one acre on which the mill stood, and Becker has occupied it ever since the conveyance to him in 1860. In 1882 the Van Rensselaers conveyed to Church the two parcels described, and in 1883 he commenced this

action to restrain Becker from taking down the mill on the one acre parcel.

The referee, on the facts, held that Becker was "a valid and *bona fide* purchaser of the one acre from Edward Settle" and that he acquired a good title in fee, by adverse possession, as against Church and his grantors. He also held that the conveyance to Church of the one acre, while Becker was in possession claiming under a title adverse to the Van Rensselaers, was void for champerty.

We think the conclusions of the referee were correct and properly followed upon his findings of fact. The evidence, while not, perhaps, satisfactory in all respects, yet was sufficient to sustain the finding that the agents of the Van Rensselaers disavowed any claim to the one acre on which the mill stood, at a time when Becker was considering its purchase from Settle, and in response to inquiries made by Becker, which had been prompted by rumors of claims against the property. A piece of evidence seems to me to possess some significance in connection with this sale by Settle to Becker. Lansing, Van Rensselaer's agent, said to Settle, when he and Becker went to him, upon their inquiry concerning rumored claims against the property, that he had "allowed" a hundred and odd dollars for the mill site and he wanted that money. Settle told him Becker was about buying it from him, and Becker says Settle gave him a receipt for the money from Lansing. This fact may or may not mean some money settlement with the Van Rensselaers about the mill site. It does tend to prove that there was no relation of landlord and tenant existing between the Van Rensselaers and Settle as to the mill property. When, therefore, Becker received and recorded his deed, he commenced a possession of the property, which was under a claim of title adverse to any which the Van Rensselaers may have had, and which, in the feature of occupation, appears from the facts to have been a continuation of an adverse occupation, commenced many years previously. Becker's adverse possession ripened into a good title, as against any claim to the fee by the Van Rensselaers, or by any one, by the expira-

tion of the statutory period of twenty years in 1880, and that title was as good, from that fact, as though the Van Rensselaers, assuming they had a title, had granted the premises to Becker.

It may be conceded that had the evidence established the existence of the relation of landlord and tenant, with respect to this one acre, that the quit-claim deed, under which Becker entered into possession, would not have been inconsistent with the tenancy. But no tenancy was proved with respect to the premises, and the quit-claim deed operated as an effectual grant, which was in hostility to any title which the Van Rensselaers may have had.

Inasmuch as Becker was in the actual possession of the land, under a claim of title adverse to the Van Rensselaers, at the time of their grant to Church, that grant was absolutely void under the statute. (1 R. S. 739, § 147.)

The appellant claims that a settlement, had between Becker and Church in 1882, after the conveyance to Church from the Van Rensselaers, and the payment by Becker of a sum of money for arrears of rent, constituted an attornment to Church, which negatived the idea of an adverse holding. But the point is not tenable, because of the absence of any proof of the relation of landlord and tenant having ever existed as to the one acre parcel. Whatever may have been due for rent from Becker could only have been based upon some obligation claimed to arise through the tenancy, pending under the original Post lease of the four acres.

I am unable to see any error in the conclusion of the referee, and further discussion of these cases seems unnecessary.

The judgments appealed from should be affirmed, with costs.

All concur, except PECKHAM, J., not sitting.

Judgment affirmed.