# M. W. UNITED GRAND LODGE ET AL.

## *vs.*

## JOHN H. MURPHY, JR., ET AL.

*Fraternal Association—Suspension of Members—Injunction—Multifariousness of Bill.*

Where four members of different subordinate lodges of one grand lodge of masons were suspended from such subordinate lodges and deprived of their rights as members for practically the same cause, insubordination, based on their actions in reference to another fraternal order, the charges having been preferred against them all by the same parties, their trials having been joint, and they having been suspended together, *held* that a joint bill by them for reinstatement was not multifarious.

p. 232

Members of a fraternal order who have been suspended without authority, but who have no right of appeal within the order, are entitled to ask relief in equity, especially if there was fraud or gross fraudulent conduct in connection with their suspension.

p. 233

A bill by members of subordinate lodges of a masonic order, who had been suspended therefrom, against the grand lodge and the head officials thereof, to compel their reinstatement as members of the order, *held* to be good as against demurrer, in the absence of anything in the constitution, by-laws, or regulations, to show that the suspension was a proper exercise of the defendants' powers.

p. 234

*Decided June 28th, 1921.*

Appeal from the Circuit Court of Baltimore City (STANTON, J.).

Bill by suspended members of a Masonic fraternity to compel their reinstatment. From a decree overruling a demurrer to the bill, defendants appeal. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

W. Ashbie Hawkins, with whom was Edwin T. Dickerson on the brief, for the appellants.

Warner T. McGuinn, for the appellees.

BOYD, C. J., delivered the opinion of the Court.

This bill of complaint was filed by John H. Murphy, Jr., David T. Harrod, Oscar J Mason, and Emanuel T. Smith, against The Most Worshipful United Grand Lodge of Free and Accepted Masons of Maryland, Inc., Joseph P. Evans, individually and as grand master of said body corporate, and George T. Duppin, individually and as grand secretary of said body corporate.

It alleges that the plaintiffs, prior to the 17th of October, 1919, were members in good standing of a fraternal order called the "Ancient Egyptian Arabic Order Nobles Mystic Shrine of North and South America and its Jurisdictions," a body corporate; that before the incorporation of the Mystic Shrine (which term we will use for brevity) a local subordinate body of said order, called Jerusalem Temple No. 2, was instituted, which was subsequently changed to Jerusalem Temple No. 4, and is still in existence, and the plaintiffs are members of it in good standing; that the plaintiff Murphy is past illustrious potentate (past presiding officer) and plaintiff Harrod is the illustrious potentate (presiding officer) of Jerusalem Temple No. 4, which on October 17, 1919, had a membership of one hundred and five members in good standing; that the defendant, Joseph P. Evans, individually, is a member of Jerusalem Temple No. 4, but holds no official position in it.

It also alleges that the Mystic Shrine prescribes the rules for admission into its order, that is, into its various temples, and that a prerequisite for membership in said order is to be a Masonic Knights Templar in good standing, or a 32d Degree Mason in good standing in a consistory of the Ancient and Accepted Scottish Rite of Free Masonry, etc.; that apart from the prerequisite for membership there is no relationship in origin or government to the Masonic fraternity, and especially to the defendant corporation (which we will speak of as the "grand lodge") ; that Jerusalem Temple No. 4 is not a subordinate temple of the grand lodge and sustains no relationship in government to it, and it cannot establish or govern temples of the Mystic Shrine.

It then alleges that the plaintiff Murphy was, prior to October 17, 1919, also a member of Enterprise Lodge No. 3, one of the subordinate lodges of the grand lodge, that he is in good standing, had paid all dues and was past master of said subordinate lodge, and as such he became and was a member of the defendant grand lodge and entitled to all the privileges and rights of such membership, including the sick and death benefits set out in the bill; that he was also a member in good standing of several other branches of the Masonic fraternity, and as such entitled to certain benefits.

It then alleges that the plaintiff Harrod was a member of Mt. Horeb Lodge No. 24, one of the subordinate lodges, in good standing, was entitled to the benefits therein stated and was also a member in good standing of several other branches of the Masonic fraternity and entitled to the benefits; that plaintiff Mason was a member of St. John's Lodge No. 5, one of the subordinate lodges of the grand lodge, and also certain branches of the Masonic fraternity, being entitled to the benefits therein mentioned; that the plaintiff Smith is a member of Mount Lebanon Lodge No. 22, and the same kind of allegations are made as to his being entitled to the benefits, etc. It is then alleged that all of the said branches of free masonry are separate and distinct bodies, but that they pro-

vide in their laws and rules that no one can become or remain a member unless he is a member of some symbolic Masonic lodge or grand lodge, recognized by them, and loss of membership in such symbolic lodge causes one to lose his membership in said branches.

It is further charged that at a regular meeting of Jerusalem Temple No. 4, a motion prevailed to reduce the fee of reinstatement to membership in said temple during the months of February and March, 1919; that several members who had been dropped for non-payment of dues applied for reinstatement, some of whom were refused, some rejected and others held for further action; that as the time had expired Presiding Officer Harrod discharged the committee and ordered the chairman to return the fees to the rejected applicants; that at a meeting held in May, 1919, there was a discussion over a report of the chairman in regard to the class of applicants and the defendant Evans, who was present at the meeting only as a member of the temple, then made a threat that if certain men were not reinstated, Jerusalem Temple would not make another man, and he would see to it, and at a later meeting he offered a motion that the committee on reinstatement be permitted to make its report, but Presiding Officer Harrod declared it out of order, as the time limit had expired; that the defendant Evans then informed the presiding officer that he would report his actions and the proceedings of the temple to the grand lodge, of which Evans was and is grand master; that there should be no more meeting as Shriners and no Shriners' excursions until after the grand lodge meeting, and he declared the Jerusalem Temple silent and that for violation of the above any member would have to deal with him; that he refused to address the chair on leaving and tore from his coat the shrine emblem; that although they knew that said Evans, either as grand master of the grand lodge or individually, had no right, power or authority to silence the Jerusalem Temple, or in any way to interfere with its operations, the plaintiffs, being both Ma-

sons and Shriners, and being desirous of continuing the amicable relations existing between the orders, reported the action of Evans and forwarded the minutes of Jerusalem Temple to J. M. Morris, the imperial potentate of the Mystic Shrine.

The bill, outside of exhibits, occupies twenty-six pages of the printed record, and hence we cannot attempt to quote from it at length throughout, but it in substance states that Imperial Potentate Morris notified Illustrious Potentate Harrod that he had authorized Noble Freeman of Mecca Temple No. 10 of Washington, D. C., and also imperial treasurer of the imperial council, to go to Baltimore for the purpose of reviewing and adjusting the differences which had arisen between the members of Jerusalem Temple and Grand Master Evans, that, on the request of Noble Freeman, the plaintiff Harrod called the temple together and some time afterwards Noble Blake, who was elected imperial potentate in place of J. M. Morris, received a communication from Evans, in which the latter said that the matter was being investigated by a commission appointed by the grand lodge.

On the third of October, 1919, the plaintiffs, and each of them, received a communication signed by E. V. Stokes, as secretary of a commission, enclosing a copy of charges filed against each of them, and informing them that the commission appointed by the grand lodge to hear the charges would sit for that purpose on October 14, 1919. Those against Murphy were for insubordination in refusing to obey an order issued by the grand master (Evans), forbidding master masons from attending any meetings of the Mystic Shrine and for refusing to obey a summons to attend the grand lodge in Frederick City August 18, 1919, to answer said charges; those against Harrod were for insubordination in refusing to obey an order of the grand master to adjourn Jerusalem Temple No. 4 until such time as the affairs of the Temple could be investigated by the grand lodge, and for being in communication with parties outside of that jurisdiction, trying to

get orders to open up Jerusalem Temple; those against Mason were for insubordination in attending a meeting of Jerusalem Temple on June 27, 1919, and for attending a meeting of the imperial council of the Mystic Shrine and that against Smith was for insubordination in attending the meeting on June 27, 1919.

It is alleged that the charges were void, because they do not show any violation of a law or rule of the grand lodge, and because the grand lodge had no jurisdiction over the subject matter of the charges, and had no power to hear them, but that the plaintiffs appeared specially before the commission for the purpose only of filing pleas to the charges of the grand master, denying the jurisdiction of the grand lodge or the commission to hear or take any action on them; that the commission overruled them and thereupon the plaintiffs declined and refused to offer any testimony on the merits of the charges, and left the room; that the plaintiffs, and each of them, received a notice from E. V. Stokes, secretary of the commission, and from George T. Duffin, grand secretary, to appear before the session of the grand lodge on the 17th day of October, 1919, at the place and hour named; that complying with said request they appeared, and the commission then and there made its report, recommending that the plaintiffs be publicly reprimanded and that the grand lodge go on record to prohibit the initiation of any master mason in the Mystic Shrine, and to prohibit any members of Jerusalem Temple, as master masons, from attending any meetings of said temple until such time as the affairs of said temple had been adjusted and persons placed in charge of said temple who would be acceptable to the grand lodge; that the grand lodge then and there adopted the report and recommendation of the commission, and the plaintiffs were called before the pedestal in the grand lodge to receive the public reprimand recommended by said commission and adopted by the grand lodge, and the plaintiffs, and each of them, re-

fused to receive said reprimand, whereupon, by an order of said grand lodge, they and each of them were suspended.

The bill avers that the charges against them are denied and said Evans knew, when he preferred them, that neither he as grand master nor the grand lodge had jurisdiction to entertain or hear them, and they were preferred by said Evans out of the malignity of his heart, as a punishment to them because of the rejection of certain candidates who had applied for reinstatement, and to fraudulently deprive them of their property and fraternal rights in their several subordinate lodges and several subordinate branches of Freemasonry, and in the grand lodge; that it was the purpose and plan of said Evans to pack the said Jerusalem Temple with members friendly to the scheme of bringing said temple under the control of the grand lodge and to nullify its allegiance to the said imperial council. It is specifically charged that the acts of Evans and of the grand lodge were unlawful and fraudulent, and in utter disregard and fraud of their property, corporate and fraternal rights and null and void, and, if the defendants be not restrained, that the plaintiffs, and each of them, will be deprived of their sick benefits, in the event of sickness, and their families or representatives will be deprived of their death benefits, in case of their deaths. They also say that they and each of them have tendered their dues and other payments required by the rules and regulations, and shall continue to do so, and that they claim the right to attend the meetings of their several subordinate lodges and branches of Masonry, etc.

They allege that there is no rule, regulation, by-law or constitutional enactment of the grand lodge requiring them, or either of them, to exhaust the remedies of said corporation, as a condition precedent or otherwise, before exercising their rights to invoke the aid of the courts of law or equity of this State for redress, and that the unlawful, fraudulent and void acts complained of in their bill are the acts of the grand lodge, the ultimate authority, the court of last resort

of said fraternity and from whose decision there is no appeal. The bill also contains the usual allegations of being remediless at law and that the value of their rights cannot be estimated, and they, and each of them, have sustained irreparable damages. A number of prayers for relief, suited to the facts alleged in the bill, are contained in it.

The bill is unnecessarily long and would have been much clearer if there had been less repetition and fewer words, but it is not necessarily multifarious because there are four plaintiffs, each of whom has some interest which is not precisely the same that the others have. They are members of different subordinate lodges of the grand lodge, and their connections with all of the other branches of the Masonic fraternity, as set out in the bill, are not the same, but the four plaintiffs belong to the same temple of the Mystic Shrine, and each belongs to some subordinate lodge of the grand lodge, although different ones, and they seek the same relief. All of them were suspended from their respective subordinate lodges and deprived of what they claim to be their rights for practically the same cause—insubordination, as it is called, which is based on their actions in reference to the Mystic Shrine. The charges were preferred at the same time by the same parties and, so far as they had trials, they were joint. They were suspended together—the proceedings being similar to a joint prosecution, resulting in a joint conviction. The punishment was practically the same, differing in degree and not in kind, so far as it differs.

It is said in *Miller's Eq. Proc.*, p. 138, in reference to the limitations upon the rule as to multifariousness, where the bill embraces different persons as plaintiffs or defendants who have no privity with each other: "Thus the objection does not apply where the parties, plaintiffs or defendants, have one common interest touching the matter of the bill, although they may claim under distinct titles and have independent interests, * * * Although in these cases there may be distinct interests in the different plaintiffs or defendants,

yet there is a general right and privity as to the claim asserted in the bill. These principles have been applied in numerous cases." An illustration given by Mr. Miller is where "Several slaves claiming the right to freedom under the same will, each having a common interest in asserting a perversion of the trust created by it, affecting their rights, may unite in the same bill to compel the executor to execute a deed of manumission." JUDGE PHELPS, in his *Jurid. Eq.*, sec. 41, said, "If plaintiffs' several interests are not antagonistic, it matters not that they are distinct, and unconnected plaintiffs may join where there is one connected interest among them all, centering in the point in issue." See also *Beachey* v. *Heiple*, 130 Md. 683. But we will not burden this opinion by citing other authorities on that question, as it is too well settled to require that. If these plaintiffs are each entitled to relief, it would be unfortunate if, instead of having one bill of twenty-six printed pages, plus the many exhibits, not printed in the record, the practice required four times that amount.

The long line of cases in this State, beginning with *Anacosta Tribe* v. *Murbach,* 13 Md. 91, and coming down to *Grand Lodge* v. *Green,* 136 Md. 582, explain our position in reference to such organizations, and it will not be necessary to repeat what we have so often said in reference to the courts taking jurisdiction over controversies involved in them. There have been cases, however, in which we have been compelled to take jurisdiction over the matters involved, and this seems to be one of them, as made out in the bill, by which we must, in passing on the demurrer, of course be governed. If it be true, as alleged, that there is within the order no appeal from the action of the grand lodge, and it has acted without authority, and especially if there was fraud and gross fraudulent conduct, the parties are entitled to ask relief in a court of equity. So far as it appears in the bill and exhibits, the grand lodge had no right to exercise control over the members of the Mystic Shrine, at least unless there was something in

that order which would make its members unfit to be members of the grand lodge, or its subordinate lodges, or something to that effect, and if, as the bill in substance alleges, Evans, as grand master of the grand lodge, was using his position and the grand lodge for his own selfish, fraudulent and unlawful purposes, we cannot deny the plaintiffs the right to ask the aid of a court of equity. It may be that an answer and testimony will explain away the only allegations that could call upon the court to interfere, just as has been done in some of these cases.

But some of the allegations in this bill are of a character that make it difficult, if not impossible, to believe that such powers are conferred upon the grand master of the grand lodge, or upon the lodge itself, as they have asserted, in the absence of something in the constitution, by-laws or some rule or regulation to show that they had such powers, and we have not found any in the examination we have made of the exhibits filed, as could justify such arbitrary and unjust conduct as is alleged on the part of Grand Master Evans and the grand lodge. We feel called upon, therefore, to affirm the order below, overruling the demurrer, and will remand the cause, so that an answer or answers can be filed in such time as the lower court may allow, after receiving the mandate from this Court.

We deem it proper to add that we cannot give our approval to the practice adopted in this case of furnishing such a bulk of exhibits which are not a part of the printed record. There are twenty exhibits filed by agreement of the solicitors, some printed, some typewritten and a few in longhand. There is only one copy of each, which of course is not sufficient for the different members of the Court, and there was no occasion to thus burden the Court by such an array of exhibits. In an agreement between the solicitors there could have been included, in a comparatively short space, everything that could have been of any possible use on this appeal—stating such by-laws, rules or regulations, short excerpts from the minutes

of the bodies (or still better their substance) and memoranda of dates, etc., of certificates of incorporation as were thought to be applicable.

> *Decree overruling the demurrer to the bill affirmed, and cause remanded, with leave to the lower court to grant such time as it deems proper for an answer or answers to be filed, the costs of this appeal to be paid by the appellants, and the costs below to abide the final result of the case.*