# SIGMUND KLEIMAN

•

*vs.*

# SAMUEL NEEDLE ET AL.

*Misrepresentations by Vendor—Rescission of Sale.*

A court of equity has jurisdiction to set aside a sale for misrepresentations by the vendors, and to require them to repay money paid as a deposit on the sale.        pp. 111, 112

A misrepresentation on behalf of the vendor as to the aggregate annual rentals from the property at the time of the sale, *held* to be sufficiently material to justify the setting aside of the sale, although, before the time at which the purchaser was to take over the property, the rentals were raised, by the efforts of the vendor, to the amount originally named by his representative.        p. 113

*Decided January 11th, 1922.*

Appeal from the Circuit Court No. 2 of Baltimore City (STUMP, J.).

Bill by Samuel Needle and Jacob L. Cardin against Samuel Kleiman and Minnie Kleiman, his wife, and Simon Needle. From a decree for plaintiffs, said Kleiman and wife appeal. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Vernon Cook,* for the appellant.

*Edwin T. Dickerson,* with whom were *William Penrose, Dickerson & Nice,* and *J. Calvin Carney* on the brief, for the appellees.   Affirmed.

PATTISON, J., delivered the opinion of the Court.

By the prayer of the bill in this case the court was asked to set aside and annul a sale, at public auction, to the appellees of certain leasehold property, known as No. 220 N. Holliday Street, in the City of Baltimore, and to require the appellants to refund one thousand dollars, paid as a deposit on the sale.

The appellants, Sigmund Kleiman and Minnie Kleiman, his wife, were the owners of the above mentioned leasehold property, and, desiring to sell it, they, through E. T. Newell and Company, auctioneers, advertised it, at public auction, to be sold on the 1st day of December, 1920. The improvements upon the property consisted of a four story building used for business purposes, each story being occupied by different tenants.

. The appellees, Samuel Needle and Jacob L. Cardin, together with Simon Needle, brother of Samuel, attended the sale, and Simon, for and on behalf of himself, Samuel and Cardin, bid upon said property, and it was struck off to him, at and for the sum of $15,500. He gave to the auctioneer, Ernest T. Newell, his individual check for $1000 as a deposit, and signed a paper writing in which he acknowledged purchasing said property at and for the sum named.

It is claimed by the appellees that at the time of the sale, the auctioneer announced that the aggregate annual rentals from said property at that time amounted to $2400. This claim is supported not only by the evidence of each of the appellees and Simon Needle, but also by the auctioneer himself, and is denied only by the appellant, Sigmund Kleiman, who testified that the announcement was that the annual rental of the property when the settlement was to be made therefor, sixty days after the day of sale, would be $2400.

The day after the sale, on December 2nd, the appellees and Simon Needle met, and, after discussing the sale, Simon Needle agreed to sell, and the appellees agreed to buy, his interest in the property acquired under the sale, which is spoken of by them as his profits, at and for $150, and the

appellees gave him their check for $1150, $1000 of which was to reimburse him for the $1000 which he, on the day before, had, by his check, paid to the auctioneer as deposit; and $150 was paid to him for his interest in the profits.

When this was done, Samuel Needle, either on the same day or the following day, called upon William Penrose, an attorney of the Baltimore bar, to have him examine the title to the property bought by the appellees, and, in the course of their conversation in connection therewith, it was suggested by Samuel Needle that if Mr. Penrose desired they would permit him to come in with them in the purchase of the property, at the time telling him of the announcement made at the sale that the aggregate rentals of the property were $2400 a year. Later in the day Mr. Penrose went to look at the property, it being only a short distance from his office, and while there learned that the aggregate annual rentals at that time were but $2040, and upon his return to his office he called Samuel Needle over the 'phone, telling him of what he had learned in respect to the rental of said property.

On the next day Samuel Needle and Cardin called upon one or more of the tenants of the property and verified the information communicated to them by Penrose as to the amount of the annual rentals received therefor. They then called upon Simon Needle and demanded the return of the money paid by them to him. He referred them to Mr. Newell, the auctioneer, to whom he had paid $1000 of the money demanded of him. It was then that they called upon Newell and demanded of him the return of the $1000, basing their demand upon the misrepresentation made by him at the sale as to the extent of the aggregate annual rentals received for the property.

He admitted to them that he had made the announcement, and stated that he had done so upon the statement, and at the suggestion, of Mr. Kleiman; and that he had on that day, about an hour before, given to Kleiman his check for the amount received by him, less his and the advertising

charges in connection with the sale. He, however, called up Kleiman and told him of the position taken by the appellees in relation to the alleged misrepresentation made by him at the sale in respect to the amount of the aggregate annual rentals received at that time for the property, and asked him not to use the check. Kleiman replied, as Newell testified, that "he thought the rentals would be $2400 by the time the purchasers were to take title to the property," which he claimed was sixty days after the day of sale, that he, in fact, "had made some partial arrangements with either his tenants or prospective tenants or through some other means by which the rentals at the time title was had to the property * * * would be $2400." Newell at the same time called up the bank, upon which he had given the check, and asked them to withhold payment of it, but the bank overlooked his direction and the check when presented to it was paid.

The record, however, discloses that, on February 1st, sixty days after the day of sale, the rent then being received therefor would, if continued, amount to an annual rental of $2400. This increase of rental was produced by increasing the rent of the second floor tenant, Dietrich, from thirty dollars per month, the amount, as stated in the brief of the appellants' counsel, that Dietrich was paying on the day of sale, to sixty dollars per month, the permanency and *bona fides* of which was assailed by the appellees.

The court, at the conclusion of the evidence, by its decree passed on the 30th day of April, 1921, set aside and annulled the sale, and ordered the defendants to return to the plaintiffs the deposit of one thousand dollars, as prayed for in the bill. It is from that decree that the appeal in this case is taken.

The sole question to be determined upon this appeal is whether the appellees, plaintiffs below, were entitled to have the sale herein mentioned set aside, and to have the court order and direct the appellants, defendants below, to pay to them the sum of one thousand dollars, paid by them as a

deposit, because of the alleged misrepresentation made at the sale by Newell, the auctioneer.

In the recent case of *Needle* v. *Cover,* 138 Md. 646, the procedure was the same as in this case. In that case Cover, the purchaser, bought certain leasehold property near where the property in this case is located. At the sale certain misrepresentations were made as to the time the tenancies of those occupying the building had to run, which misrepresentations, it is alleged, induced the purchaser to buy, which he would not have done had such misrepresentations not been made. Cover, the purchaser, had paid a deposit of two thousand dollars, and upon the refusal of Needle, the vendor, to return to him the money, Cover filed his bill asking that the sale be annulled and set aside, and that Needle refund to him the money he paid as a deposit. The case was heard by the court below, and a decree was passed by it setting aside the sale and ordering the vendor to return to the vendee the money so paid by the vendee as a deposit, and, on appeal from that order to this Court, the action of the lower court in granting the decree was affirmed.

JUDGE STOCKBRIDGE, who delivered the opinion in *Needle* v. *Cover,* replying to the argument there made that a court of equity had no jurisdiction, because, as claimed, there was an adequate remedy at law, said that "a suit to recover the amount of the deposit would have proven but one of numerous actions which might have been brought, such as a bill for specific performance, or a suit for the amount of the bid less the deposit already made, and thus a single action at law could have been brought which would have been but a beginning of protracted litigation."

In *Davis* v. *Rosenzweig Realty Company,* 192 N. Y. 128, 20 L. R. A. (N. S.) 175, the court said, quoting from an earlier case, *Becker* v. *Church,* 115 N. Y. 562: "There cannot be any doubt as to the jurisdiction of courts of equity over actions to cancel and set aside instruments on the ground of fraud in their procurement. Such actions are in the nature of preventive remedies. The existence of the instru-

ments may be a well-founded source of anticipated danger by the party whom they do, or whom they are designed, to affect. * * * The general rule governing the subject is well set forth in 24 *American & English Encyclopaedia of Law,* 2nd edition, page 615, as follows:

" 'Where the complainant in equity seeks to have a contract totally rescinded and declared void for fraud, the fact that he seeks, also, a recovery of money is not sufficient ground for the refusal of the court to entertain jurisdiction; for in an action at law the recovery of money is the principal object, while in the suit in equity the rescission of the contract is the principal matter of relief and the recovery of money is merely an incidental, although a necessary, consequence; hence, the court, being properly in possession of the cause for the purpose of granting purely equitable relief, will proceed to do complete justice between the parties, although a part of the relief granted is purely legal in its nature. This principle is in full accordance with the broader principle of equity, that in all cases of fraud, if the party defrauded is entitled to any equitable relief as to the contract in which he has been defrauded, and if it is necessary for him to establish the fraud in order to obtain this relief, the court will grant him full and entire relief, notwithstanding that as to a part thereof he has a perfect remedy in an action for damages at law.' "

There can, we think, be no doubt as to the jurisdiction of a court of equity to hear and determine a case of this character.

It was held in *Needle* v. *Cover, supra,* that the misrepresentations there made were material and sufficient to warrant the action of the court in setting aside the sale, and in directing the return to the purchaser of the money paid as a deposit by him.

It would be in vain, we think, to argue that the representation, falsely made, that the aggregate annual rentals from the property was $2400, when, it fact, it was but $2040, was not a material misrepresentation.

The rental of the property, or the amount received therefor at the time of the sale, enters very largely into the determination of its value, and a purchaser would be largely governed and controlled by such rental value in determining the amount at which he would be willing to purchase it.

It is fair to assume that, had the announcement been made that the rental value of the property in question was only $2040, the purchaser would not have given so much for it as he did upon the announcement that its aggregate annual rental was $2400; but it is contended by the appellants that, although this misrepresentation was made, and the annual rents received therefor at the time of the sale were only $2040, nevertheless the purchasers are not injuriously affected thereby, inasmuch as the annual rentals at the time when the purchasers were to take over the property, sixty days after the day of sale, were in fact $2400, if the same should continue for the requisite length of time. But, does it follow from the existence of the fact mentioned that the purchaser is not injuriously affected by said misrepresentation and that it is not material?

The sale was made at or near the close of the year, a time when many tenancies ordinarily expire, and, moreover, it was known to the purchaser that one or more of these tenancies were about to expire under leases previously made at a time when rents were, in all probability, much lower than at the time of the sale, for, as disclosed by the record, rents were extremely high at the time the sale was made. In fact, Simon Needle, who, in purchasing the property, was acting for himself and the appellees, testified that, knowing that some of the tenancies were about to expire at the time of the sale, and knowing of the increased rentals of property in the city, he was governed and controlled in his bidding by such misrepresentation, thinking that the leases then about to expire could be renewed at a much larger rental, and had it not been for such misrepresentation, he would not have bought the property at the price at which it was struck off. In other words, he was misled by such misrepresentation to

believe that such rentals were those existing' at the time of the sale, fixed and established by leases previously made when rents were much lower, and which rentals he had reason to believe could be increased upon the renewal of the leases which were soon to expire; and subsequent disclosures show that he was correct in so thinking, for the rentals were increased from $2040 to $2400 between the time of the sale and the 1st day of February following, as claimed by the appellants.

Because of the said misrepresentation, which, in our opinion, was material, and upon which the appellees relied and had the right to rely, and without which they would not have agreed to purchase the property at the price mentioned, the appellees are entitled to the relief sought in the prayer of their bill, that is, to have the sale annulled and the money, paid by them as a deposit, returned to them, and so we will affirm the decree appealed from.

*Decree affirmed, with costs.*