MYRTLE E. STEPHENSON ET AL. *v.* UPPER ASH-
BURTON REALTY COMPANY, INC., ET AL.
[No. 33, January Term, 1936.]

*Decided April 9th, 1936.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, SHEHAN, and JOHNSON, JJ.

*Daniel Partridge, III,* with whom were *C. Chester Caywood, Bion B. Libby* and *Ridgely P. Melvin,* on the brief, for the appellants.

*Horace S. Whitman,* with whom was *George E. Rullman* on the brief, for the appellees.

SLOAN, J., delivered the opinion of the Court.

This appeal is from a decree sustaining a demurrer to five bills in equity filed by interveners, with leave of the court, in a suit brought by Alice Mac Steed, Hazel L. Nyman, and Ellen V. Gensler, executrix of the estate of Bessie W. Mason, deceased, on behalf of themselves and such others similarly situated, who might join with them, for the cancellation of contracts for the purchase by them severally from the Upper Ashburton Realty Company, Inc., hereinafter called the realty company, of certain lots and parcels of land located on the Magothy River in Anne Arundel County, in two subdivisions called

Manhattan Beach and Oak Grove, and to procure a decree for the refund of all monies paid by the plaintiffs on account of those contracts. With the realty company there were named as defendants J. Brooks Mellor, its then vice' president, by whom the contracts were signed, and Ben S. Hill, Andre L. Broussard, and the Broussard Company, Inc., a Delaware corporation, through whom the sales were made, all of whom were charged with the alleged fraud as the ground for the decree prayed.

It is alleged in the bill of complaint that the defendants and one Ralph W. Harrison, since deceased, conspired each with the others and with divers other persons to defraud the public by the sale of lots in the two subdivisions by a fraudulent system known as the "lunch and lecture" system, which, without a recital of the details, is nothing more than intensive salesmanship applied by "high pressure" salesmen, who take the prospect on the ground and sell a good story at a high price with a lot, which may or may not have a substantial market value.

The bill then alleged that, in furtherance of the conspiracies charged, the realty company, by J. Brooks Mellor, its vice president, by agreement with Ralph W. Harrison, since deceased, and the defendant Hill, dated December 8th, 1931, gave to them the exclusive right for two years to sell any or all of the lots in both subdivisions at such prices as they might fix, but not less than $300 for inside lots, or $1,000 for waterfront lots, the selling price to be equally divided, as paid, between the first and second parties, the expenses to be paid by the second parties, Harrison and Hill, the second parties "to organize and inaugurate a sale upon said property under the Culver system" or "luncheon and lecture system," which we infer from the allegations of the bill was to take the prospect, feed him, put him in a good humor, and then, with wild and fantastic statements as to present worth and prospective values and profits, overcome the resistance of the customer or guest, if any remained, and get his signature to an installment contract with as large a cash payment as the one called the "closer" or "financial

manager" can induce the buyer to pay. On the same day, December 8th, 1931, Harrison and Hill assigned to Andre L. Broussard a one-third interest in their contract with the realty company, and he, in turn, assigned to the Broussard Company, Inc., which he organized and controlled.

The charges of fraud made by the plaintiffs in the original bill were statements that many rich and prominent people had bought lots, many who bought had sold at a profit, some had doubled their money, sales were being made by customers every day at a profit, and the original bill alleged as the chief reason they bought was the promise of the salesman that they would resell within certain times in the near future at substantial profits.

The bill of complaint then prayed the cancellation of all of the contracts, the return of the money paid on account, the appointment of a receiver for the realty company, discovery, and general relief.

The realty company and Mellor answered, but did not demur to the bill of complaint; the other defendants having been returned *non est.* The answer admitted the sales and the execution of the contracts, but denied each and every charge of fraud and misrepresentation alleged, and disclaimed responsibility for any promises of resale made by salesmen, and stressed in their brief a provision in the memorandum of sale and receipt for the cash payment "that no guarantee of resale for the purchaser of the above described property is made by this Company, and that no agreement is made between the parties hereto other than that appearing herein." No authority is cited that any such provision shall operate as a cover for fraud.

Long after the bill and answer were filed, the appellants, Myrtle E. Stephenson, Ellen V. Sullivan, Lucille E. Roberts, Bertha Jacobson, Edith L. Hoag, and Josephine Bay, filed their petitions asking leave of the court to intervene as plaintiffs in this case, and on leave granted as prayed they each filed their several bills of complaint, except Edith L. Hoag and Josephine Bay, who had a joint bill. To each of the intervening bills of complaint the

defendant realty company and Mellor demurred, and it is from a decree dismissing the five intervening bills that the interveners appeal. The plaintiffs in the original bill are not parties to this appeal. The allegations of the intervening bills are substantially the same as those of the original bill, except in one very material respect, and that is that no one of the plaintiffs is interested in the contract of any other. Each contract is a separate and distinct entity, made with respect to different properties and at other times.

The chancellor sustained the demurrers on the grounds that there was a misjoinder of plaintiffs, and that each of the intervening plaintiffs had an adequate remedy at law.

In support of their contention that these plaintiffs, original and intervening, can make common cause against the defendants, the appellants cite and rely on *United Grand Lodge v. Murphy*, 139 Md. 225, 114 A. 876, 879, and *Sears v. Barker*, 155 Md. 323, 141 A. 908, but both of these cases show entirely different facts from those we have here. In *United Grand Lodge v. Murphy*, four members of a lodge had had charges preferred against them jointly, and together they came into equity in a proceeding against their grand lodge to seek redress for their grievances. The defense of multifariousness was made by the grand lodge, that each member's grievance was personal to him, and therefore not to be linked with that of the others. The answer as given by this court (139 Md. 225, at page 232, 114 A. 876) was that: "The charges were preferred at the same time by the same parties, and, so far as they had trials, they were joint. They were suspended together—the proceedings being similar to a joint prosecution, resulting in a joint conviction." In the case of *Sears v. Barker, supra,* there was but one plaintiff, who sued to have a deed set aside which she claimed had been made in fraud of her claim against one of the defendants, who she charged, had defrauded her in the sale of worthless stock. All of the parties to the circuitous transfer of the property were made defendants in the suit on the charge that they were participants in a trans-

fer of the principal's property in fraud of his creditors, and not that they were all concerned in the stock transaction. To the same effect see *Beachey v. Heiple,* 130 Md. 683, 101 A. 553. In this case none of the plaintiffs has any interest in the subject-matter of the contracts of the others with the realty company. The determination of the rights of one contractee does not affect the rights of another, except for the effect that it might have as a precedent. The mere fact that they were all victims of the same real estate venture does not create a community of interest. None of the interveners, who are the appellants, has any interest in the contracts of any of the plaintiffs in the original bill, and the chancellor was right in sustaining demurrers to their bills of complaint. *Isaac v. Emory,* 64 Md. 333, 338, 1 A. 713; *Postal Tel. Cable Co. v. Snowden,* 68 Md. 118, 124, 12 A. 549.

While this conclusion results in an affirmance of the decree appealed from, we should, as the question may otherwise hereafter arise, express our opinion of the form of action to be pursued in such cases. The chancellor has said that these are cases in which there is a remedy at law, by an action of deceit, but such an action, however, does not furnish a complete remedy. If the contracts of sale had been consummated, the purchase money fully paid and the appellants had then discovered that they had been deceived and injury had resulted, they would have been entitled to recover in an action of deceit. *Pasley v. Freeman,* 3 Term Rep. 57, 100 Eng. Rep. 450. Where, however, one has been deceived by the false representations of a vendor, who at the time knew of their falsity, into purchasing property, equity furnishes the proper remedy to rescind the contract, and, once having acquired jurisdiction, to do complete justice will retain it and enter a decree for the return of the money paid on account of a fraudulent contract. "The alternative remedy of rescission and restitution is in its origin equitable, though now relief can generally be obtained at law. If the defrauded party has parted with nothing, but has merely entered into an executory obligation by simple

contract, it needs no citation of cases to establish the point that he may plead the fraud as a defense. * * * If the defrauded person has parted with property which he wishes to regain, he is compelled to become an actor. * * * The test of equity jurisdiction is the inadequacy of available remedies at law." 3 *Williston on Contracts*, sec. 1525. In the case of *Kleiman v. Needle,* 140 Md. 107, 117 A. 3, it was held that equity furnished the remedy for the cancellation of a contract for the purchase of real estate and the return of a payment on account, where there had been a material misrepresentation of the rents then being received from the tenants. It was also held in *Needle v. Cover,* 138 Md. 646, 114 A. 698, that in such case equity gave the one complaining the only complete remedy. In *Telma v. Gingell,* 157 Md. 411, 146 A. 221, the same remedy was approved, but a decree denied because the evidence was that the vendee, when put to his election to repudiate or affirm the contract, affirmed it and thus lost his right to complain. From these precedents it appears that equity does have jurisdiction in this state to right such wrongs as are here complained of.

The briefs both argue the questions of laches and the sufficiency of the allegations of fraud, but, as they were not considered by the chancellor, they will not be passed on here.

For the reason given, misjoinder of plaintiffs, the decree must be affirmed.

> *Decree affirmed, with costs to the appellee,*
> *and bills dismissed, without prejudice.*